IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| RODNEY E. WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-6121-CV-SJ-HFS |
| | ) | |
| AMERICAN AIRLINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Before the court is the motion of defendant American Airlines, Inc. for summary judgment. Plaintiff Rodney E. Washington brought this action alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count I); the Civil Rights Act of 1991, 42 U.S.C. § 1981 (Count II); and the Missouri Human Rights Act, Mo. Rev. Stat. § 213.055 (Count III). Plaintiff contends that American Airlines refused to promote him to the position of machinist when he was employed as a mechanic at the Kansas City Overhaul Base, and that defendant did so because of his race. Plaintiff seeks lost wages and benefits, prejudgment interest, front pay or an order that he be hired as a machinist, compensatory damages including those for emotional distress, punitive damages, attorneys' fees and costs, and injunctive relief.

Background Facts

Plaintiff, an African-American, began working for TWA at the Kansas City Overhaul Base in 1974. When American Airlines acquired TWA in 2002, plaintiff became an employee of defendant. He continued to work at the Kansas City facility as a mechanic until that facility closed in September 2010, and since then he has worked for defendant as a mechanic at the Fort Worth Alliance Base. Plaintiff is a member of the Transport Workers Union of America, AFL-CIO, and

the terms and conditions of his employment are governed in part by a collective bargaining agreement between the union and defendant. This agreement provides that defendant is to prepare any qualifying tests it uses to determine its employees' competency, and employees interested in a mechanical classification must pass the skill qualifications test in order to be promoted. Defendant must provide copies of the qualifying tests to the union. Of those employees who are qualified for promotion to a classification that is subject to bidding, the agreement states that the most senior qualified employees who bid for the vacancy will be appointed.

Plaintiff submitted a bid for an open machinist position on August 8, 2007.[1] The posting for the position showed that a qualifying test, MPG-1 Exam, was required of all applicants. Five other individuals also submitted bids for the machinist position that month.[2] The parties do not agree on facts concerning the scheduling of the applicants' MPG-1 Exams. Defendant states that applicants for a machinist position must schedule their qualifying test at a time that is mutually convenient for the applicant and the tester, and that these six applicants' exams were scheduled in accordance with the employees' reported availability and the availability of an examiner and subject matter expert without regard to when each person had submitted a bid. Plaintiff denies that a scheduling policy of "mutual convenience" exists in writing or was told to employees. Plaintiff points out that defendant's Qualifications Administration Manual, which sets forth information concerning the purpose, rules, and content of qualifying tests, states that the examiner is responsible for promptly scheduling the exam. Plaintiff states that he was the first applicant for the position and that he

---

[1] Although the parties speak of "an" open machinist position, the record shows that defendant posted announcements of two machinist vacancies on August 8, 2007, and four additional machinist vacancies on August 15, 2007.

[2] Of the six employees who applied and were tested, four passed. All four were promoted to machinist.

announced his immediate availability for testing. The first exam was administered on August 31, but plaintiff's test was not scheduled until September 17. Only one applicant (Glenn Ruppert) was tested later than plaintiff, on September 18.

All six applicants had Kenneth Kerns sit in their exams as the subject matter expert. Four of the applicants had Robert Carroll, who worked at the Kansas City overhaul base, as their examiner. Those exams were conducted between August 31 and September 13. Mr. Carroll was not available on September 17 and 18, so plaintiff and Glenn Ruppert were tested by Justin Howard, a Maintenance and Engineering Training Specialist who works for defendant in Tulsa, Oklahoma. The first four applicants to be tested, all of whom are Caucasian, passed the exam. Plaintiff and Glenn Ruppert (who is also Caucasian) did not pass the exam.

Defendant had additional openings for the machinist position later in 2007, and five more applicants were administered the MPG-1 Exam from late October to early December. Mr. Carroll conducted the exams and Mr. Kerns was the subject matter expert. Two applicants passed, both Caucasian. Three applicants failed; two were Caucasian and one was Hispanic.

All of the applicants who successfully completed the MPG-1 Exam were promoted to the position of machinist.

The difference between the parties' positions boils down to defendant contending that plaintiff did not satisfactorily complete the MPG-1 Exam, and plaintiff asserting that he did not receive equal treatment in the administration of the testing and thus he refutes the claim that he did not successfully complete it. According to defendant, plaintiff satisfactorily completed the three demonstration/questions of the exam, but failed to complete a required project because he removed the lathe he was milling from the bushing before he had finished the inner and outer diameters.

3

Plaintiff asserts he was not informed that a particular sequence was required to successfully machine the bushing; he was not told that removing the bushing from the lathe would cause him to fail the exam; he intended to complete the project by taking it to a mill to cut the hex; and Messrs. Howard and Kerns have never stated that plaintiff's method would not have been successful if he had been given a reasonable amount of time to complete the task.

The parties also disagree on other details concerning the testing, and plaintiff challenges Mr. Howard's credentials and experience to serve as an examiner for this particular exam. Defendant points out that plaintiff did not enter another bid for the machinist position even though he admittedly had opportunities to do so.

On November 2, 2007, plaintiff filed a Charge of Discrimination with the EEOC and the Missouri Commission on Human Rights.[3] On September 4, 2008, the EEOC issued both a determination that it was unable to conclude that defendant committed a violation and a notice of right to sue. The Missouri Commission issued its right to sue letter on September 17, 2008, based on the EEOC's processing. This action followed.

### Standard of Review

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The court views the facts and inferences in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith

---

[3] Plaintiff had earlier filed a union grievance concerning the administration of his MPG-1 Exam, asking to be retested by Mr. Carroll. He did not allege that he was discriminated against based on his race. Plaintiff's grievance was denied by both his immediate supervisor and his chief operating officer.

4

Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c)(1), (e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. Lower Brule, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. Id. Rather, "the disputes must be outcome determinative under prevailing law." Id. (citations omitted). Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." Matsushita, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.

Race discrimination claims brought under Title VII, Section 1981, and the MHRA are governed by the same analysis and standards. See Young v. Time Warner Cable Capital, L.P., 443 F. Supp. 2d 1109, 1123 n. 23 (W.D. Mo. 2006) (citing LeGrand v. Area Res. for Cmty. & Human Servs., 394 F.3d 1098, 1101 (8th Cir. 2005), and Richmond v. Bd. of Regents of Univ. of Minnesota, 957 F.2d 595, 598 (8th Cir. 1992)). Because plaintiff offers no direct evidence of discrimination, the

5

burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), will be utilized. Marquez v. Bridgestone/Firestone, Inc., 353 F.3d 1037, 1038 (8th Cir. 2004). Under this framework, plaintiff has the burden of establishing a prima facie case of discrimination. Marquez, 353 F.3d at 1038. Once a prima facie case is established, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for the adverse employment action. Id. If the employer is able to articulate such a reason for the adverse employment action, the burden shifts back to plaintiff to show that the employer's proffered reason is merely pretext for race discrimination. Id.

To establish a prima facie case of race discrimination in a failure-to-promote case, plaintiff is required to prove that: (1) he is a member of a protected group; (2) he was qualified for the position he applied to fill; (3) he was not promoted; and (4) a similarly situated individual, not part of the protected group, was promoted. Pope v. ESA Servs., Inc., 406 F.3d 1001, 1007 (8th Cir. 2005).

Plaintiff's Prima Facie Case

Although defendant does not dispute that plaintiff is a member of a protected group and that he applied for a promotion for which he was rejected, defendant denies that plaintiff was qualified for the machinist position or that promotions were given to similarly situated employees who are not African-American. Defendant asserts that plaintiff was not qualified for a machinist position because he did not satisfactorily complete the qualifying test, the MPG-1 Exam, which defendant claims is an objective measure of an applicant's abilities. Similarly, defendant argues that plaintiff cannot identify any similarly situated non-African-Americans who were promoted because no

6

applicant who failed the MPG-1 Exam was promoted to the position of machinist. Thus, defendant argues that plaintiff has not established a prima facie case of discrimination.

Plaintiff disagrees with the premise of defendant's argument, namely that the MPG-1 Exam is an objective measure. According to plaintiff, if his exam had been fairly scheduled and conducted, he would have successfully completed it and his test result, experience, and longevity would have rendered him fully qualified for the machinist position. He also argues that he was similarly situated or superior to others who were promoted, but for the improperly administered exam, and therefore he has satisfactorily established a prima facie case of discrimination.

Facts material to the fundamental issue of testing are disputed by the parties. As for scheduling, defendant seems to assert both that the applicants scheduled their own exams and that the exams were scheduled for them.[4] The American Airlines' employee to whom both statements is attributed is a Human Resources Operations Manager at a Texas facility who does not purport to have been at the Kansas City facility in 2007,[5] and who states that defendant "has no way of knowing when particular employees made verbal requests to be tested or on what dates they wanted to be tested." (Defendant's Suggestions in Support of Its Motion for Summary Judgment Exhibit C ¶ 16.) Defendant's Qualifications Administration Manual does provide that "the Test Examiner

---

[4]"Applicants for the Machinist position must schedule their qualifying test at a time that is mutually convenient for the applicant and the tester." (Defendant's Statement of Undisputed Material Facts ¶ 24.) "The MPG-1 Exam was scheduled for employees who submitted bids in August 2007 after the bidding closed and in accordance with the employee's reported availability and the availability of an Examiner and Subject Matter Expert." (Id. ¶ 26.)

[5]Allen Patton, Jr. provided an affidavit that is Exhibit A to Defendant's Suggestions in Support of Its Motion for Summary Judgment, and he is also identified as the person who verified Defendant's Answers to Plaintiff's First Interrogatories found at Exhibit C. Those documents are the sources for the quoted statements in footnote 4, supra.

7

is responsible for promptly scheduling and expediting the completion of all parts of the test." (Defendant's Suggestions in Support of Its Motion for Summary Judgment, Exhibit A, Attachment 2 at p. 11.) Thus, defendant cannot say why plaintiff and Glenn Ruppert were tested during a week when defendant brought in Justin Howard as a tester. Mr. Howard conducted only those two exams, and he failed both applicants.

The parties do agree that the first posting for the machinist position was on August 8, 2007, and that plaintiff submitted his bid that day. Plaintiff states that he requested a testing time when he submitted his bid, and announced he was immediately available. Defendant does not dispute this statement. Plaintiff denies that defendant has a scheduling policy based on mutual convenience or that he was told his test would be scheduled based on his reported availability. The parties also agree that the first test was administered to an applicant on August 31 and that plaintiff's test took place on September 17. These details tend to support plaintiff's assertion that his test was not scheduled in the same manner as his fellow applicants.

Defendant presents the MPG-1 Exam as an objective assessment. Plaintiff, however, points to a passage from defendant's Qualifications Administration Manual that allows subjectivity in assessing an applicant's performance. "The Test Examiner need not necessarily require that the employee complete an assigned job in its entire[t]y and may approve the job if the employee displays sufficient workmanship and knowledge to indicate his ability to complete the job satisfactorily." (Defendant's Suggestions in Support of Its Motion for Summary Judgment, Exhibit A, Attachment 2 at p. 14.) This may be relevant because defendant asserts that the only reason plaintiff failed to successfully complete his exam is "because he removed the unfinished bushing from the lathe prior to finishing the outer and inner diameters." (Id. at Exhibit E ¶ 9.) Plaintiff

8

denies having been told that he could not remove the bushing before completing the task; essentially, he denies having received any direction that the task had to be performed in a certain way. Plaintiff states that he removed the bushing because he intended to finish the job by taking the bushing to a mill to cut the hex, and that doing so is a common machine shop technique.

The parties disagree about other facts surrounding the test, as well, details such as the actual testing time, delays that subtracted time from the test, and Mr. Howard's qualifications to administer this exam. Collectively, these disputed facts demonstrate that summary judgment is not appropriate on the issue of whether plaintiff possesses the qualifications for the machinist position.

This finding impacts the issue of whether other similarly situated non-African-American individuals were promoted, the last element in plaintiff's prima facie case. Assuming for the purposes of this analysis that plaintiff is able to demonstrate that he is qualified, the parties agree that four other qualified applicants - all Caucasian - were promoted to the position of machinist. Accordingly, plaintiff has successfully demonstrated a prima facie case of discrimination.

Defendant's Proffered Nondiscriminatory Reason

Defendant asserts that, even if plaintiff were able to establish a prima facie case of discrimination, which it denies, it has rebutted the presumption of discrimination by articulating a nondiscriminatory reason for not promoting plaintiff, namely that he did not meet the minimum qualifications for the position because he failed to pass the MPG-1 Exam. Plaintiff disagrees, arguing that defendant cannot rely on the exam as a nondiscriminatory reason because he received disparate treatment in both the scheduling and administration of the exam. Defendant's burden to articulate a legitimate, nondiscriminatory justification for refusing to promote plaintiff "is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." Davis

9

v. KARK-TV, Inc., 421 F.3d 699, 705 (8th Cir. 2005) (quoting Floyd v. Mo. Dept. of Soc. Servs., Div. of Family Servs., 188 F.3d 932, 936 (8th Cir. 1999)). Defendant's proffered reason satisfies its burden. Accordingly, the burden shifts to plaintiff to produce evidence sufficient to create a genuine issue of material fact whether defendant's proffered reason was a pretext for discrimination. Pope v. ESA Servs., Inc., 406 F.3d 1001, 1007 (8th Cir. 2005).

Plaintiff advances a number of ways in which he believes he was treated not only differently than other applicants, but unfairly. He points out that of the six applicants who took the MPG-1 Exam, only he and one other employee had Mr. Howard as their examiner. Plaintiff does not mention that the other unsuccessful applicant is Caucasian. He repeats his complaints of unfairness in scheduling his exam, asserts that the six applicants were asked to demonstrate different skills and that he was shorted on time by an examiner who was not qualified, and contends that he was never told that there was only way to successfully finish the bushing project. He also complains that nepotism was involved in the process, as one of the successful applicants is the son of a former employee.[6] Finally, plaintiff states that he was laughed at following his unsuccessful testing.

Plaintiff has set forth facts which indicate that he may not have been treated fairly as he sought promotion to a machinist position. However, he has not presented evidence that the real reason for not being promoted was discrimination based on his race. For plaintiff to prevail on his claims under Title VII and Section 1981, it is not enough for him to show that others were promoted when he was not, even if he is more qualified and has more seniority than others or believes that his superiors did not like him. "Pretext . . . must be read as shorthand for indicating that a defendant's

---

[6]This is not a situation where a single position was available and the applicants competed for it. All of the applicants who successfully completed the MPG-1 exam were promoted to machinist. Thus, one person's success would not have denied plaintiff a promotion.

proffered discriminatory explanation for adverse employment action is a pretext for *unlawful discrimination*, not that it is merely false in some way." Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011, 1017 (8th Cir. 2005) (emphasis in original). No matter how much evidence plaintiff presents that defendant treated similarly-situated employees in a disparate manner, he cannot meet his burden with respect to pretext unless he demonstrates that racial animus was at the root of the failure to promote. Arnold v. Nursing & Rehab. Ctr. at Good Shepherd, 471 F.3d 843, 847 (8th Cir. 2006). Merely discrediting the reason given is not enough. The plaintiff must show "that the circumstances permit a reasonable inference to be drawn that the real reason" for the employer's action "was because of his race." Johnson v. AT&T Corp., 422 F.3d 756, 763 (8th Cir. 2005). A fact-finder is not permitted to rule for a plaintiff claiming intentional discrimination because he has arguably pointed out a blunder or some unfairness by the employer such as "arrogance" or nepotism (personal favoritism) unrelated to race.[7] Plaintiff has not presented evidence sufficient to create a genuine issue as to whether his failure to achieve a promotion resulted from discrimination based on plaintiff's race. Accordingly, he has not met his burden to show that defendant's proffered nondiscriminatory reason was pretextual. Summary judgment will be entered on plaintiff's Title VII and Section 1981 claims.

### MHRA

A claim under the MHRA will survive summary judgment if there is a genuine issue of material fact as to whether race was a contributing factor in the employment decision. See Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 820 (Mo. 2007). Having concluded that

---

[7]Nepotism could of course support a disparate impact case where racial favoritism or hostility is not required. EEOC v. Steamship Clerks Union, Local 1066, 48 F.3d 594, 606 (1st Cir. 1995).

11

no such genuine issue exists, I will also enter summary judgment on plaintiff's claim under the MHRA.

Accordingly, it is hereby ORDERED that American Airlines' motion for summary judgment (ECF doc. 44) is GRANTED.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

October  7 , 2011

Kansas City, Missouri